COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


DONALD LLOYD RUSSELL, JR.
                                          OPINION BY
v.    Record No. 2530-99-3         JUDGE LARRY G. ELDER
                                        OCTOBER 24, 2000
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                 Mosby G. Perrow, III, Judge

         Joseph A. Sanzone (Sanzone & Baker, P.C., on
         brief), for appellant.

         Shelly R. James, Assistant Attorney General
         (Mark L. Earley, Attorney General, on brief),
         for appellee.


     Donald Lloyd Russell, Jr., (appellant) appeals from his

bench trial conviction for possession of cocaine with intent to

distribute in violation of Code § 18.2-248.  On appeal, he

contends the trial court erroneously (1) denied his motion to

suppress and (2) found the evidence sufficient to prove he

constructively possessed the cocaine.  We hold, under the

totality of the circumstances, that the police lacked probable

cause to arrest appellant or search his car and, therefore, that

the trial court erroneously denied appellant's motion to

suppress the evidence seized from his person, car and residence.

Accordingly, we reverse appellant's conviction and remand for

further proceedings if the Commonwealth be so advised.

I.

BACKGROUND[1]

At about 5:00 a.m. on February 3, 1999, Lynchburg Narcotics Investigator Duff had a face-to-face meeting with an informant with whom he had not previously met or had any dealings. In the hope of gaining "[c]onsideration on an outstanding charge," the nature of which does not appear in the record, the informant advised Duff that an African-American male named Troy, who was from New York City, would deliver a large quantity of cocaine to a specified residence in the Lynchburg College area at 7:30 a.m. that same morning. Duff refused to testify to the actual address of the residence because it was "extremely specific as to the identity of the informant." The informant reported that Troy lived near Burrus Lumber Company off Campbell Avenue and that he drove a blue or green rented Ford Taurus. Although the informant did not know Troy's full name, he described two previous shooting incidents in which Troy had been involved.

Because Duff had not previously worked with this informant, he conducted "an in-depth interview with [him] to establish credibility and reliability . . . as to his knowledge of the drug trade." Duff reported his personal belief that "one of the most important ingredients in reliability is [the informant's]

_____

[1] In ruling on a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial. See DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

-

knowledge of the drug trade," saying that he "value[d] that very highly." The informant admitted he was "involve[d] in the drug trade" as a seller and user of crack and powder cocaine and accurately described to Duff the process of making crack cocaine. He also gave Duff specific information about other people involved in the drug trade in the area, which coincided with information Duff had received from other informants Duff knew to be reliable.

With the specific information the informant had provided about "Troy," Duff was able to determine Troy was the alias of Donald Russell. Russell resided directly across the street from Burrus Lumber Company, and Duff observed a dark blue Ford Taurus in the driveway of the residence. Duff showed the informant a picture of Russell, and the informant confirmed Russell and Troy were the same person. Duff admitted that most of the verifiable information provided by the informant--appellant's name, city of origin, prior involvement in two specific shootings, and current residence--was public knowledge.

Duff opted not to apply for a search warrant at that time because he "wanted to verify more of this activity that was going to occur." He admitted he could have applied for an anticipatory search warrant conditioned upon appellant's arrival at the house specified by the informant.

At about 6:00 a.m., Duff began surveillance on appellant's residence. At about 7:10 a.m., appellant exited the house and

-

entered the Taurus. He stopped the car briefly to put something in a mailbox and then drove to Route 29 North heading away from the city. Duff opted not to continue surveillance at that time and drove instead to the Lynchburg College area, where the informant reported appellant would deliver cocaine at 7:30 a.m. Appellant was out of Duff's view for about fifteen minutes. At precisely 7:30 a.m., Duff observed appellant drive into the Lynchburg College area. Appellant drove past the street on which the informant said he would stop, and Duff radioed to other officers, who stopped appellant's vehicle within one or two blocks of the residence specified for the drug transaction. Duff admitted appellant's vehicle was headed away from the specified residence at the time the officers stopped him but said "[t]here are different ways to get to that place" and "[i]t's not uncommon for somebody to circle an area before they make a cocaine drop."

Appellant was arrested, and the vehicle and appellant's person were searched. Using the evidence seized in that search, the police also obtained a warrant to search appellant's residence.

Appellant sought to suppress the fruits of those searches. The trial court denied the motion, noting that, "although we don't know the basis of the informant's information," "under the totality of the circumstance test I think there's enough."

-

II.

ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). "[T]he test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed." Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970).  Probable cause to arrest must exist exclusive of the incident search.  See Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990).

On appeal, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d

-

911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause to the particular facts of the case.[2]  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

When the factual basis for probable cause is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances probable cause analysis.  See Illinois v. Gates, 462 U.S. 213, 230, 233, 103 S. Ct. 2317, 2328, 2329, 76 L. Ed. 2d 527 (1983).

> [A] deficiency in [either veracity or basis of knowledge] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.  If, for example, a particular informant is known

[2] This is higher than the standard we apply in reviewing the existence of probable cause to support the issuance of a warrant.  Appellate review of a magistrate's probable cause determination is deferential in nature, and the reviewing court determines whether the evidence, viewed as a whole, provided the magistrate with a substantial basis for concluding that probable cause existed to issue the warrant.  See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983).  Even if the warrant is ultimately found to be unsupported by probable cause, evidence seized pursuant to that warrant may nevertheless be admissible if the officer is found to have relied on the warrant in good faith.  See Polston v. Commonwealth, 255 Va. 500, 503-04, 498 S.E.2d 924, 925-26 (1998).  In the absence of a warrant, however, we review the issue of probable cause de novo, giving no deference to the officer's legal determination.  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.  It may also be that "'in a doubtful or marginal case a search under a warrant may be sustained where without one it would [fall].'"  2 Wayne R. LaFave, Search and Seizure § 3.1(c), at 14 (3d ed. 1996) (quoting United States v. Ventresca, 380 U.S. 102, 106, 85 S. Ct. 741, 744, 13 L. Ed. 2d 684 (1965)).

-

for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity --which if fabricated would subject him to criminal liability--we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to the informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.

Id. at 233-34, 103 S. Ct. at 2329-30 (citations and footnote omitted).

When the informer is a "criminal" rather than a "disinterested citizen" victim or eyewitness and the tip is conveyed in the form of a police officer's hearsay testimony, the reliability of the tip may be established in many different ways, including by showing that:

(1) the informer has previously given reliable information; (2) the informer previously has worked with the police and has made controlled buys or worked in narcotic surveillance or other law enforcement efforts; (3) the informer provided detailed information that only a person who had actually observed the criminal activity would know; or (4) the informer has made a declaration against his penal interest.

Polston v. Commonwealth, 24 Va. App. 738, 745, 485 S.E.2d 632, 635 (1997), aff'd on other grounds, 255 Va. 500, 498 S.E.2d 924

-

(1998); see also Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (noting that statement against penal interest, without more, will not raise an informant's tip to probable cause). Also, knowledge of a particular area's "drug culture" is an appropriate factor for consideration in assessing an informant's credibility. See Polston, 24 Va. App. at 749, 485 S.E.2d at 637; see also United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996) (noting that this factor should be considered carefully because "anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold").

We applied these principles to the issuance of a search warrant in Boyd v. Commonwealth, 12 Va. App. 179, 402 S.E.2d 914 (1991). The informer indicated that he was familiar with cocaine and its packaging through personal use and that, within the previous seventy-two hours, he "had personally observed cocaine packaged for distribution, and scales used for such purpose, at [Boyd's] residence." Id. at 182-83, 402 S.E.2d at 916-17. He described Boyd, his house and his car, recited his address, and gave the name of Boyd's girlfriend, whom he said resided at the same address. See id. The investigating officer was able to confirm the wholly innocent portions of the tip, and the magistrate issued a search warrant for Boyd's residence. See id. at 182-83, 402 S.E.2d at 916-17.

-

On appeal of the denial of Boyd's motion to suppress, we noted that verification of innocent details, although not dispositive, "establish[ed] that the informer at least had a limited personal familiarity with the suspect" and that verification was a circumstance to be considered in determining the credibility and reliability of the tip.  Id. at 189, 402 S.E.2d at 920.  We held,

> [b]ased upon the personal data furnished about the informer, the disclosure that the informer had provided the officer sufficient personal information from which he could be identified, the allegation that the informer had personally observed the drugs and criminal activity, and the allegation that the officers had verified the accuracy of the informer's information concerning the suspect's activities and his living arrangements, . . . that a substantial basis existed for the magistrate to have found probable cause to issue the [search] warrant.

Id. at 191, 402 S.E.2d at 922.

Appellant's case is similar to Boyd but differs in material respects.  In both cases the informant's identity was known or reasonably ascertainable, the informant had not previously provided information to the police, the informant made a statement which was arguably against penal interest by admitting he had used illegal drugs, and the police were able to verify innocent information concerning the suspect's identity, automobile and place of residence.

-

However, Boyd involved a warrant whereas appellant's case did not. Therefore, in Boyd, we deferred to the magistrate's probable cause determination, holding "that a substantial basis existed for the magistrate['s]" issuance of the warrant. Id. In appellant's case, by contrast, the police opted not to obtain an anticipatory warrant, and we review the issue of probable cause de novo, giving no deference to the probable cause determination made by the officer. See supra note 2 and accompanying text.

Second, evidence of the basis of the informant's knowledge was much stronger in Boyd than in appellant's case. In Boyd, the informant indicated he had personally observed cocaine being packaged and distributed in Boyd's residence within the previous seventy-two hours. In appellant's case, by contrast, the informant provided significant general information about the Lynchburg drug trade and its participants other than appellant, information which Officer Duff was able to confirm through other informants known to be reliable; but no evidence indicated the basis for the informant's specific claim that appellant would be delivering cocaine to a specific location at a specific time.

Third, Boyd contained less information tending to call the credibility of the informer into doubt. In Boyd, although the tipster admitted to having used drugs in the past, he was more of a "disinterested citizen" eyewitness than a "criminal" informant because he was gainfully employed and had no criminal

-

record, and no evidence indicated that he gave the information in the hope of gaining leniency on an outstanding criminal charge. In appellant's case, by contrast, the evidence established that the informant provided the information about appellant in the hope of gaining "[c]onsideration on an outstanding [criminal] charge."

We next examine these latter two distinctions.

Here, the predictive nature of the informant's tip might have compensated for deficiencies in the basis of the informant's knowledge and provided probable cause for appellant's arrest if the tip had been more accurate. See Gates, 462 U.S. at 242-46, 103 S. Ct. at 2334-36 (predictive nature of detailed tip, coupled with extensive police corroboration of suspicious circumstances "ordinarily not easily predicted," provided probable cause for search warrant for car, despite anonymity of tipster). However, the tip did not predict that appellant would drive north on Route 29 before heading to the Lynchburg College area, and it specified that, at 7:30 a.m., appellant would drive to a particular residence near the college, which residence was "extremely specific as to the identity of the informant." Instead of driving to that residence, appellant drove past the street on which the residence was located and was headed away from it at the time the officers executed the stop. If the evidence had established the informant's connection to that residence and appellant had,

-

in fact, stopped there at the time the informant predicted,
these events could have provided sufficient indirect evidence of
the basis of the informant's knowledge.  In the absence of such
events, however, we hold, as a matter of law, that the portions
of the tip the officers were able to corroborate were
insufficient to bolster the absence of evidence of the basis of
the informant's knowledge.[3]  Alabama v. White, 496 U.S. 325,
330-32, 110 S. Ct. 2412, 2416-17, 110 L. Ed. 2d 301 (1990)
(where anonymous tip predicted that defendant would leave
apartment in described car at specific time and drive with brown
attaché case containing cocaine to nearby motel and police
confirmed activities except for defendant's name and possession
of attaché case and cocaine and stopped defendant "just short of
[the specified] [m]otel," case was "close" but provided
reasonable suspicion for a Terry stop); United States v.
Campbell, 920 F.2d 793, 794-97 (11th Cir. 1991) (holding, under
Gates, where reliability of confidential informant not
established independently, that mere confirmation of tip that
woman with whom informant allegedly had been working would
arrive in Montgomery with three Mexican males via a specified

_____

[3] We also note that additional facts not revealed about how
the informant knew appellant was to deliver cocaine to the
specified residence at 7:30 a.m. that day most likely did not
protect the informant if he was truthful, because the
time-specific information most likely made his identity apparent
to appellant.  Only if the informant was lying was the
non-disclosure of the basis of knowledge likely to protect him.

-

highway in a green-and-white Chevrolet pickup truck with Texas license plates and stop at a specified truck stop between 11:30 p.m. and 1:00 a.m. may have provided reasonable suspicion for investigatory stop but did not provide probable cause for arrest or search).

We also find that the portions of the tip that were corroborated were insufficient to overcome the deficiencies in the evidence concerning the informant's credibility or veracity. Although an informant's statements against penal interest may enhance his overall credibility and the likelihood that a specific tip is reliable, see Polston, 24 Va. App. at 745, 485 S.E.2d at 635, the evidence established that the informant provided the information about appellant in the hope of obtaining "consideration on an outstanding charge."  Because the nature of this outstanding charge does not appear in the record, we are unable to conclude that the informant's admission to being a drug user and seller sufficiently established his overall credibility or the reliability of his allegations about appellant.  "[A]dmissions of crime do not always lend credibility to contemporaneous or later accusations of another [crime]."  United States v. Harris, 403 U.S. 573, 584, 91 S. Ct. 2075, 2082, 29 L. Ed. 2d 723 (1971) (plurality opinion).  As Professor LaFave has recognized, "Courts . . . should not utilize the admission-against-penal-interest concept in a blunderbuss fashion, but instead should assess in a more careful

-

fashion, preferably upon a full disclosure by the police of all relevant circumstances, what the significance of that admission is in the context of the particular case."  2 Wayne R. LaFave, Search and Seizure § 3.3(c), at 124-25 (3d ed. 1996).  This is so because "these individuals typically provide information after they have been apprehended by the police and after it is apparent to them that the police already know of their own involvement in the serious offense."  Id. § 3.3(c), at 128.

Under the facts of this case, given the absence of evidence concerning the nature of the charges pending against the informant, we cannot ascertain whether his general admission to being a user and seller of drugs was a statement against penal interest tending to establish or enhance his credibility and the reliability of his tip or merely an admission of behavior in which he had already been caught red-handed.  Compare Harris, 403 U.S. at 584, 91 S. Ct. at 2082 (plurality opinion) (where opinion showed no outstanding charges against informant and informant gave "sworn verbal statement" that he had been purchasing illicit whiskey from premises to be searched for over two years, statement provided probable cause for issuance of search warrant for premises); Polston, 24 Va. App. at 741-43, 485 S.E.2d at 633-34 (although charges of an unknown nature were outstanding, no evidence indicated informant gave tip in express hope of obtaining consideration for outstanding charge, and informant testified before magistrate, under penalty of perjury,

-

that he had used drugs at least once a week for several years and that he personally had seen drugs on premises to be searched within the previous seventy-two hours).

Further, we are unable to conclude that the content of the informant's tip gave him any reason to fear prosecution for giving false information if the tip failed to prove completely accurate. First, the bulk of the information the police corroborated was not predictive and was generally known or ascertainable to the public. Any failure of the predictive portions of the tip to come true would not likely have resulted in the informant's prosecution for giving false information. The failure of appellant to leave his own residence that morning, to arrive at the specified residence at the specified time, or to have cocaine in his possession when he did could have been explained by any number of factors, such as appellant's becoming sick, simply changing his plans, receiving a tip about the surveillance or becoming suspicious of the vehicle following him. Second, the record fails to establish that the content of the tip was based on the informant's first-hand knowledge rather than on hearsay received from a third party. Under either of these circumstances, the informant could easily conclude that he would not be held responsible if the tip did not prove wholly accurate.

Had the evidence established the informant's connection to the specific residence at which the sale was to take place or

had the police actually observed appellant's arrival there at the specified time, the totality of the circumstances likely would have established probable cause for appellant's arrest under our de novo standard of review. However, given appellant's failure to stop at or even drive directly by the specified residence, absent additional circumstances, the informant's tip could have been based on nothing more than the informant's knowledge of appellant's usual route to work or his weekly racquetball game, and his general knowledge that appellant used or sold drugs.

For these reasons, we hold that the evidence was insufficient to provide probable cause for appellant's warrantless arrest and, therefore, that the trial court erroneously denied the motion to suppress the evidence seized from appellant's person, car and residence.[4] We reverse appellant's conviction and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

---

[4] Although the facts may have been sufficient to permit an investigatory stop, see White, 496 U.S. at 330-32, 110 S. Ct. at 2416-17, the Commonwealth makes no claim that the police made any observations after the stop but preceding the arrest and search which would have elevated their suspicions to probable cause, and we glean no facts from the record which would support such a conclusion.