COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


GENEARL MELVIN GARY

                                          MEMORANDUM OPINION* BY

v.       Record No. 0432-03-1              JUDGE LARRY G. ELDER
                                             DECEMBER 2, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

Melinda R. Glaubke (Slipow, Robusto & Kellam, P.C., on brief), for
appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
Attorney General; Josephine F. Whalen, Assistant Attorney General,
on brief), for appellee.


Genearl Melvin Gary (appellant) appeals from his bench trial convictions for armed

statutory burglary, wearing a mask in public, two counts of robbery, two counts of abduction

with intent to gain pecuniary benefit, and four counts of use of a firearm in the commission of

the abductions and robberies.  On appeal, he contends his arrest was not supported by probable

cause and, thus, that the trial court erroneously denied his motion to suppress statements he made

to police following that arrest.  He also contests the sufficiency of the evidence to prove

abduction for pecuniary benefit.  Finally, he contends that using a firearm in the commission of

abduction for pecuniary benefit is not an offense proscribed by Code § 18.2-53.1 and that his

convictions for two such offenses must be reversed.

--------------------

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

We hold that appellant's arrest was not supported by probable cause. Thus, we reverse the trial court's denial of appellant's motion to suppress his statements. Without reaching appellant's other assignments of error, we remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights. Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). "[T]he test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed." Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). Probable cause to arrest must exist exclusive of the incident search. Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990).

On appeal, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). However, we review *de novo* the trial court's

application of defined legal standards such as probable cause to the particular facts of the case.[1]

Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

When the factual basis for probable cause is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances probable cause analysis. Illinois v. Gates, 462 U.S. 213, 230, 233, 103 S. Ct. 2317, 2328, 2329, 76 L. Ed. 2d 527 (1983).

> [A] deficiency in [either veracity or basis of knowledge] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity--which if fabricated would subject him to criminal liability--we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to the informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.

Id. at 233-34, 103 S. Ct. at 2329-30 (citations and footnote omitted).

---

[1] As we have noted previously:

> This is higher than the standard we apply in reviewing the existence of probable cause to support the issuance of a warrant. Appellate review of a magistrate's probable cause determination is deferential in nature, and the reviewing court determines whether the evidence, viewed as a whole, provided the magistrate with a substantial basis for concluding that probable cause existed to issue the warrant. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983).

Russell v. Commonwealth, 33 Va. App. 604, 610 n.2, 535 S.E.2d 699, 702 n.2 (2000).

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" Florida v. J.L., 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254 (2000) (quoting Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990)) (citation omitted). Nevertheless, situations exist "in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide [(1)] reasonable suspicion to make an investigatory stop,' [White,] 496 U.S. at 327[, 110 S. Ct. at 2414]," id., or (2) probable cause for an arrest or search, Gates, 462 U.S. at 242-46, 103 S. Ct. at 2334-36. The corroboration may be of innocent behavior or details, id. at 243 n.13, 103 S. Ct. at 2335 n.13, but innocent information must be sufficiently predictive so as to establish "the informer's knowledge or credibility," J.L., 529 U.S. at 271, 120 S. Ct. at 1379. Compare Gates, 462 U.S. at 242-46, 103 S. Ct. at 2334-36 (holding that predictive nature of detailed tip regarding defendants' travel plans, coupled with extensive police corroboration of suspicious circumstances "ordinarily not easily predicted," provided probable cause for search warrant for car, despite anonymity of tipster), with White, 496 U.S. at 330-32, 110 S. Ct. at 2416-17 (where anonymous tip predicted that defendant would leave apartment in described car at specific time and drive with brown attaché case containing cocaine to nearby motel and police confirmed activities except for defendant's name and possession of attaché case and cocaine and stopped defendant "just short of [the specified] [m]otel," case was "close" but provided reasonable suspicion for a Terry stop); United States v. Campbell, 920 F.2d 793, 794-97 (11th Cir. 1991) (holding, under Gates, where reliability of confidential informant not established independently, that mere confirmation of tip that woman with whom informant allegedly had been working would arrive in Montgomery with three Mexican males via specified highway in green-and-white Chevrolet pickup truck with Texas license plates and stop at specified truck stop

between 11:30 p.m. and 1:00 a.m. may have provided reasonable suspicion for investigatory stop but did not provide probable cause for arrest or search).

Here, the anonymous tipster's basis of knowledge was clear from the tip. He or she reported having been present when appellant, Travis Saunders, and two other men named Jameel and Danton viewed a news report regarding the crimes and admitted their involvement. See, e.g., State v. Smith, 777 A.2d 182, 188 (Conn. 2001) (noting that "informant's overhearing of the defendant planning or admitting criminal activity constitute[s] a type of firsthand knowledge . . . 'highly relevant' under Gates"). However, this information, standing alone, was insufficient to provide probable cause for arrest. "The mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a Terry stop [or an arrest] without meeting the reliability requirement . . . ." J.L., 529 U.S. at 273 n.*, 120 S. Ct. at 1380 n.*.

Here, the anonymous informant's tip was not predictive, and to the extent the record established partial corroboration of the tip, we hold this corroboration was insufficient to provide probable cause for appellant's warrantless arrest. The informer accurately described appellant. He also accurately indicated appellant lived on Bridle Creek Boulevard, a fact corroborated by the police information system, Pistol, and brief surveillance of appellant. Finally, he reported appellant had been present at a particular address on Halter Drive and claimed that, on that occasion, appellant and several others--including Travis Saunders and two men with the first names Jameel and Danton--admitted their involvement in the robbery at issue.

Police surveilled the Halter Road address and confirmed appellant's presence there on a subsequent occasion. Police learned that Tiffany Saunders, aunt of Travis Saunders and appellant, resided at that address.[2] Police also obtained partial corroboration from Steven Rivera,

---

[2] Detective Primeaux also learned that Michael Cuffee was a participant in the robbery and that Cuffee was the father of Tiffany Saunders' baby. However, no evidence established whether Primeaux learned these things before or after he arrested appellant.

who was under arrest for driving one of the "get-away" cars at the time the tip was received.[3]

Rivera said that Travis Saunders, Jameel Cross and three of their associates had committed the robbery. The victims also reported the perpetrators were five masked men of a specified race, one of whom carried a small silver .32 caliber handgun, a shell from which was found at the scene, and a gun matching that description was found in Rivera's truck when he was arrested. Thus, Rivera's statement and the anonymous tip corroborated each other with respect to the involvement of Travis Saunders and Jameel Cross in the robbery.

However, only the anonymous tipster named appellant as a participant in the crimes, and no other evidence sufficiently linked appellant to the events at issue. At least one of the victims testified she could identify the masked men by their hairstyles and skin color, but the record contains no indication that she described their hairstyles to Detective Primeaux or that Primeaux confirmed appellant's hairstyle matched that of one of the perpetrators before Primeaux arrested appellant. Further, although two cars were seen leaving the scene of the robbery, no evidence in the record indicates their make, model or color.[4] Thus, no evidence in the record links the green

---

[3] We assume without deciding that Rivera's information naming Travis Saunders and Jameel Cross was credible. We note, however, that Rivera had already been arrested for his participation in the offenses when he named Saunders and Cross as participants. The reliability afforded statements against penal interest may be diminished when such statements are made after one has been "'apprehended by the police'" and "'it has become apparent to them that the police already know of their own involvement in the serious offense.'" Russell, 33 Va. App. at 615-16, 535 S.E.2d at 704-05 (quoting 2 Wayne R. LaFave, Search and Seizure § 3.3(c), at 124-25, 128 (3d ed. 1996)).

[4] At the suppression hearing, Detective Primeaux testified merely that his investigation revealed "two vehicles [were] involved." No evidence at the suppression hearing established the color of those two vehicles or any other vehicles seen at or near the scene. Thus, in ruling on the suppression motion, the trial court mistakenly concluded that, when "[t]he robbery occurred[,] there were two cars, one of [which] was green."

At trial, when Detective Primeaux recounted the details of his interrogation of appellant, he testified merely that he *told appellant* a "green-and-black, four-door car" and a black car were spotted at or near the scene of the robbery. Detective Primeaux never testified and no substantive evidence in the record indicated that witnesses saw cars matching these descriptions at the scene.

Mitsubishi Mirage or black Honda Accord that appellant drove with some regularity to either of the cars associated with the robbery.

In the absence of such evidence, the minimal corroboration for the anonymous tip that appellant admitted participating in the robbery was insufficient to provide probable cause for appellant's warrantless arrest and provided, at most, reasonable suspicion to detain him for questioning.  Compare United States v. Procopio, 88 F.3d 21, 25-26 (1st Cir. 1996) (finding probable cause supporting issuance of warrant where one informant of unknown veracity said defendants had committed certain robbery of armored truck, but "information from three other informants . . . tend[ed] to corroborate" first informant's story and defendants were known to have "beg[u]n spending large sums of cash" in months following robbery), with State v. Walker, 584 N.W.2d 763, 768-69 (Minn. 1998) (holding detailed account in anonymous letter of named persons' involvement in murder--corroborated only by police investigation showing these were "actual persons" and that address given for one of them, an "easily ascertainable fact," was correct--was insufficient to provide probable cause).

For these reasons, we hold appellant's arrest was not supported by probable cause.  Thus, we reverse the trial court's denial of appellant's motion to suppress his statements.  Without reaching appellant's other assignments of error, we remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

                                                                    Reversed and remanded.