COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


DEMETRIUS DEANGELO ASKEW

                                            OPINION BY
v.   Record No. 2062-01-1           JUDGE ROBERT J. HUMPHREYS
                                          AUGUST 20, 2002
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

         Robert W. Jones, Jr. (Jones & Jones, P.C., on
         brief), for appellant.

         Leah A. Darron, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General, on
         brief), for appellee.


     Demetrius Deangelo Askew appeals his convictions after a

bench trial, for possession of cocaine, in violation of Code

§ 18.2-250, and possession of a firearm while in possession of

cocaine, in violation of Code § 18.2-308.4(A).  Askew contends the

trial court erred in denying his motion to suppress the evidence

against him, and in ruling that a violation of Code

§ 18.2-308.4(A) requires a mandatory minimum sentence of five

years.  For the reasons that follow, we affirm the judgment of the

trial court.

     On September 14, 2000, at approximately 10:45 p.m., Newport

News Vice and Narcotics Division Detective D.M. Best received a

telephone call from a known informant.  The informant told Best

that he had observed a "black male sitting on the steps" at 811 36th Street, Apartment No. 1, in Newport News and that he had observed that the man had cocaine in his pocket. The informant described the man as five feet six inches in height, 145 pounds, with a medium brown complexion, a medium length "afro," wearing a gray T-shirt and black or dark blue pants. This particular informant had worked as a paid informant for the previous three years, and information from the informant had led to over 200 arrests involving drug-related charges. The informant had never relayed unreliable information.

Best immediately contacted officers in the vicinity, who responded to the scene within six minutes. They observed Askew, who matched the informant's description, seated on the steps next to a woman. The officers handcuffed Askew, advised him of his Miranda rights, and told him they had information he was in possession of cocaine. One officer then asked Askew if he wanted to tell him where the cocaine was, and Askew motioned by nodding his head toward the left front pocket of his pants. The officer then recovered the cocaine from Askew's pocket. Upon searching Askew, the officer also recovered a firearm.

At the conclusion of the suppression hearing, Askew argued that the evidence should be suppressed as the information received from the informant, although reliable, did not convey when the informant had observed the information relayed to Officer Best. The trial court denied the motion, finding:

-

> I think it's fairly clear.  He said he was
> outside standing on the steps at this
> address and they went there within five or
> six minutes and there he was.

After the subsequent trial, the court convicted Askew of the charges.

During the sentencing hearing of July 18, 2001, the Commonwealth argued that the trial court should impose the "mandatory" five-year sentence on the firearm charge, pursuant to Code § 18.2-308.4(A).  The court ruled, "I'm going to go with not mandatory," and sentenced Askew to five years in prison, with four years suspended.

The following day, the Commonwealth filed a motion for re-sentencing, arguing that the trial court should have imposed the mandatory minimum five-year sentence for the firearm conviction.  Following the August 1, 2001 hearing on the matter, the trial court modified the sentence to reflect the full five-year sentence.  Although Askew argued that the mandatory minimum sentence did not apply to his firearm conviction, he did not object to the trial court's ruling in this regard.

On appeal, Askew contends the trial court erred in denying his motion to suppress the evidence against him, and in re-sentencing him on the firearm conviction, ordering that he serve the full five-year term.

In reviewing a trial court's ruling on a suppression motion, we consider the evidence in the light most favorable to the

-

prevailing party below, the Commonwealth in this instance, granting to it all reasonable inferences fairly deducible therefrom.[1]

> "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.[2]

Moreover, "[o]n appeal, it is the defendant's burden to show 'that the denial of [the] motion to suppress constitute[d] reversible error.'"[3] "Our review of the record includes evidence adduced at both the trial and the suppression hearing."[4]

The United States Supreme Court has held that "a tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated" may, standing alone, provide "sufficient indicia of reliability to

---

[1] Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

[2] McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691, 699 (1996)).

[3] Moss v. Commonwealth, 30 Va. App. 219, 223, 516 S.E.2d 246, 248 (1999) (quoting Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993)).

[4] Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

-

provide an officer with reasonable suspicion to make an investigatory stop."[5]  However, "the test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed."[6]  "When the factual basis for probable cause is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are 'highly relevant' factors in the overall totality-of-the-circumstances probable cause analysis."[7]  Indeed, the United States Supreme Court has held:

> [t]his totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip.  Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception."  Brinegar v. United States, 338 U.S. 160, 176 (1949).  "In dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and

---

[5] Florida v. J.L., 529 U.S. 266, 270 (2000) (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)); see also Johnson v. Commonwealth, 20 Va. App. 49, 54-55, 455 S.E.2d 261, 264 (1995).

[6] Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970).

[7] Russell v. Commonwealth, 33 Va. App. 604, 610, 535 S.E.2d 699, 702 (2000).

-

> practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175.[8]

Thus,

> [i]f, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.[9]

Here, Askew does not dispute the veracity of the informant, or his or her reliability. Instead, Askew's sole contention is that because Officer Best did not testify that the informant relayed to him the particular time during which he or she observed the "black male" sitting on the steps and observed that he had cocaine in his possession, the tip was insufficient to support probable cause for Askew's arrest. We disagree and hold that based on the informant's undisputed history of reliability and under the totality of the circumstances, the predictive nature, as well as the accuracy and detail of the informant's tip and accompanying description, compensated for the alleged deficiency in the basis of the informant's knowledge and provided probable cause for Askew's arrest. Furthermore, the record establishes

---

[8] Illinois v. Gates, 462 U.S. 213, 230-31 (1983).

[9] Id. at 233 (citing United States v. Sellers, 483 F.2d 37 (5th Cir. 1973)).

-

that the officers observed Askew in the subject location only minutes after receiving the tip.

Askew also contends that the mandatory minimum punishment provided for a violation of Code § 18.2-308.4, which is contained in the third, unlettered paragraph of the code section, applies only to violations of subsection (B) and not to violations of subsection (A).[10] We disagree.

Code § 18.2-308.4 provides as follows, in relevant part:

> A. It shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act (§ 54.1-3400 et seq.) of Title 54.1 to simultaneously with knowledge and intent possess any firearm.
>
> B. It shall be unlawful for any person to possess, use, or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit the illegal manufacture, sale, distribution, or the possession with the intent to manufacture, sell, or distribute a controlled substance classified in Schedule I or Schedule II of the Drug Control Act

---

[10] The Commonwealth contends Askew failed to raise an objection in this regard during the re-sentencing hearing. However, we find that Askew's argument to the trial court during the hearing sufficiently explained his contention and noted his objection, if merely by implication, allowing the trial court to specifically consider the argument in reaching its ruling. See Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) ("The laudatory purpose behind Rule 5A:18 . . . is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.").

-

> (§ 54.1-3400 et seq.) of Title 54.1 or more than one pound of marijuana.
>
> Violation of this section shall constitute a separate and distinct felony and any person convicted thereof shall be guilty of a Class 6 felony, shall not be eligible for probation, and shall be sentenced to a minimum, mandatory term of imprisonment of five years, which shall not be suspended in whole or in part. Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

To construe the statute as Askew urges would have us attribute to the General Assembly the creation of a criminal offense without providing punishment for a violation of that offense, a result that is irrational and which we will not ascribe to the legislature.[11] Further, the plain language of the statute makes the punishment provided for in the third paragraph applicable to the entire statutory "section," not to merely one of the subsections contained therein.[12]

Lastly, and contrary to Askew's contention, the legislative history of the statute supports such a construction. Prior to the 1999 amendment of the statute, Code § 18.2-308.4 provided that a violation of subsection (A) was a Class 6 felony and that a

---

[11] Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998) ("The primary objective of statutory construction is to ascertain and give effect to legislative intent. . . . The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.").

[12] See id. ("A statute is not to be construed by singling out a particular phrase . . . .").

-

violation of subsection (B) was a separate and distinct felony punishable by a mandatory three-year term of imprisonment for the first offense, and by a mandatory five-year term of imprisonment for a subsequent offense.  Thus, each subsection provided for a separate penalty for each separately defined offense.[13]  However, when the legislature amended Code § 18.2-308.4 in 1999, it provided that a "[v]iolation of this section shall constitute" a Class 6 felony punishable by a mandatory five-year term of imprisonment.[14]  Thus, the General Assembly declared that a violation of either subsection shall be a Class 6 felony subject to a mandatory minimum five-year term of imprisonment.

Accordingly, Askew's contention that the legislature's refusal to entertain House Bill 1607 in 2001, which contained a proposed amendment to change the wording of the third paragraph to "Violation of subsection A or B shall constitute . . .," has no merit.  As with any proposed but unsuccessful legislation, there may be a host of reasons for the legislature's failure to pass a proposed bill.  Thus, while we are bound by the legislative intent discernable from the enactment of a statute that becomes law

---

[13] See Moore v. Commonwealth, 27 Va. App. 192, 197-98, 497 S.E.2d 908, 910 (1998) ("A violation of Code § 18.2-308.4(A) is punishable as a Class 6 felony. . . . A violation of subsection (B) is a 'separate and distinct felony' that is punishable by a mandatory 'term of imprisonment of three years for a first conviction and for a term of five years for a second or subsequent conviction.'").

[14] Code § 18.2-308.4(B) (emphasis added).

-

following passage in both houses of our bicameral legislature, we decline to accept the corollary proposed by Askew. We will neither speculate as to possible reasons, nor ascribe a specific intent to the entire legislature, for the failure of proposed legislation to successfully run the legislative gauntlet. Therefore, we hold that the penalty provision of the statute proscribes the penalty for a violation of either subsection (A) or (B), and we affirm the judgment of the trial court.

Affirmed.